tent;" and it was held in Re Humfreville, 6 App. Div. 535, 39 N. Y. Supp. 550, that section 829 of the Code of Civil Procedure prohibits direct and indirect testimony relative to a personal transaction with a deceased person. The admission of the answer in this case did not relieve the plaintiff from the obligation of proving that all the services he rendered were pursuant to an employment. It is not to be construed as an admission dispensing with proof by the plaintiff of his employment. It is an admission that the plaintiff did some work, for which he was fully paid. It is not an admission that he was employed to do work under a contract to pay at the rate of $3,000 a year. The fact of employment was in issue. The plaintiff sought to establish it by an inference to be drawn from the character of the work he did. It is true, the evidence as to the work did not necessarily, and in respect of everything the plaintiff did, import a personal transaction with a deceased, in the sense of a direct communication between parties. As was said in Clift v. Moses, 112 N. Y. 435, 20 N. E. 392, "The questions do not, on their face, call for a disclosure of a personal transaction of the witness' with a deceased; but (to quote further from the case last cited) "it has been held with general uniformity that the section [829] prohibits, not only direct testimony of the survivor that a personal transaction did or did not take place, and what did or did not occur between the parties, but also every attempt by indirection to prove the same thing, as * * * by disconnecting a particular fact from its surroundings, and permitting the survivor to testify to what, on its face, may seem an independent fact, when in truth it had its origin in, or directly resulted from, a personal transaction." The plaintiff attempted, by this testimony, to prove the independent facts of services rendered; but from those independent facts the inference of employment to render all those services might be drawn, and that employment constitutes a personal transaction. We think that it comes within the prohibition of the statute. The right to recover is based upon an allegation of an express promise to pay at a certain rate "from month to month," and on the trial the plaintiff acknowledged that the burden was upon him to prove employment, and the case was tried upon that understanding.

Without considering other exceptions appearing in the case, we think, for the reason above stated, the judgment and order must be reversed, and a new trial ordered, with costs to appellants to abide the event. All concur; INGRAHAM, J., in result.

---

(38 App. Div. 120.)

MANHATTAN RY. CO. v. MERGES.

(Supreme Court, Appellate Division, First Department. March 10, 1899.)

1. TAXATION—DISTRESS AND SALE—MARSHAL—FEES—EXECUTION.
     Consolidation Act (Laws 1882, c. 410) § 1710, allowed fees to the "marshal for services rendered under the provisions of" the title relating to district courts, as follows: "For serving and levying an execution," certain fees. Section 854 provided that the receiver of taxes could empower the officer making distress and sale of personalty for taxes to col-

lect the costs thereof, in addition. *Held*, that the warrant under which distress was made was not an execution entitling the officer to the fees provided for in section 1710.

**2. Same—Costs.**
    The costs provided for in section 854 did not include any fees where the taxes were paid on service of the warrant without distress and sale.

Appeal from trial term, New York county.

Action by the Manhattan Railway Company against Francis Merges. There was a judgment for plaintiff, and defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and INGRAHAM, JJ.

George E. Mott, for appellant.

Herbert Barry, for respondent.

BARRETT, J. This appeal presents but a single question of law. That is whether the defendant, a city marshal, was authorized to take from the plaintiff $7,416.73 as fees upon the collection of a personal tax amounting to $296,569.23, under a warrant issued in January, 1896, by the receiver of taxes of the former city of New York. The tax was for the year 1895. The warrant directed the defendant "to levy the amount thereof, with interest thereon at the rate of seven per cent. per annum from the first day of October, 1895, to the time when the same shall be paid, by distress and sale of the goods and chattels" of the present plaintiff. Armed with this warrant the defendant, on the 29th day of April, 1896, called at the plaintiff's office, and had an interview there with its auditor. The following admission as to what then transpired appears in the record:

"The auditor thereupon placed upon a desk the sum of $296,569.23 in cash, and in another pile, alongside of the first pile, the sum of $7,416.73 in cash. The secretary of the plaintiff then stated to the defendant that this money belonged to the Manhattan Railway Company, and such was the fact, and that the plaintiff and the secretary protested against any seizure of any of this money as unlawful and unwarranted. The defendant then stated that, pursuant to authority vested in him as marshal of the city of New York, and under the warrant, a copy of which is in evidence annexed to the complaint, which was under seal received from the receiver of taxes, he seized this money in payment of taxes due by the Manhattan Railway Company for personal taxes for the year 1895, with interest and costs; and the marshal thereupon removed and took away with him the two sums of money aforesaid."

No question is presented as to the legality of the defendant's act with regard to this tax. The suit is limited to the recovery of the $7,416.73 which he claimed and took as his lawful fees upon the collection of the tax.

At the time when this transaction took place, the proceedings were governed by the consolidation act (Laws 1882, c. 410). The defendant concedes that the only provisions of law authorizing the taking of the sum in question are those contained in sections 1710 and 854 of this act. Section 1710, however, both in its letter and spirit, applies only to executions issued out of the district courts of the city, and not to warrants for the collection of personal taxes issued by the receiver of taxes, under section 855 of the same act. The first

words of section 1710 are these: "Fees shall be allowed to the said marshals for services rendered under the provisions of this title, as follows." Now, the title in question relates to these district courts, and the only services which can be rendered thereunder are those relating to process in actions in those courts. There is nothing in the title relating to the services under consideration. When, therefor, the same section (1710) provides that marshals shall receive certain fees "for serving and levying an execution," it plainly contemplates an execution in the usual sense of that word; that is, an ordinary execution, issued by a district court upon one of its judgments. This is emphasized by the provision of section 854 to the effect that, where the receiver of taxes shall proceed by distress and sale of the goods and chattels of any person for the payment of any tax due and payable, it shall be lawful for him to authorize and empower the officer making such distress and sale to collect, in addition to the tax and interest thereon, the costs of such distress and sale. It stands to reason that this provision would not have been inserted if the intention had been to treat the warrant as an execution, and to permit the same fees upon its enforcement as are allowed for serving and levying an execution. Section 1710 also provided that the fees therein allowed were all that the marshals should demand or charge; and it expressly directed that they should perform all other services required of them by law without any fees or compensation whatever, thus recognizing the common-law rule on the subject.

Here it will be observed there was no distress and sale. The marshal simply took the money laid out for him. But, even if there had been a distress and sale, the receiver of taxes did not, as he was authorized to do by section 854, supra, empower the marshal to collect, in addition to the tax and interest thereon, the costs of such distress and sale. And these costs, even if allowed, would only have been the expenses to which the marshal was put in making the distress and sale. We notice that in the charter of the present city of New York the legislature has provided that the costs of such distress and sale shall be, in addition to any disbursements, 5 cents for every dollar collected to the amount of $100, and 2½ cents for every dollar collected over $100. Laws 1897, c. 378, § 927. This latter section is a re-enactment of section 854 of the consolidation act, amended by thus defining such costs and authorizing their collection. It is quite evident that the amendment was thus ingrafted upon the old section because the latter, as it stood, did not authorize such fees. Under this section 927 of the present charter, the marshals are now entitled to charge the fees which the defendant took upon the warrant in question. But they were not authorized to make such charges under the law as it previously existed.

It follows that the taking by the defendant of the sum in question in April, 1896, was not then authorized by law, and therefore the judgment for its restoration was right, and should be affirmed, with costs. All concur.